IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCARFF BROS., INC., | : |
| *Plaintiff*, | : Civil Action No. _____ |
| v. | : |
| HEARTSTONE FARM, INC. | : |
| *Defendant*. | : |

## COMPLAINT

Plaintiff Scarff Bros., Inc. ("Scarff Brothers"), by and through its undersigned counsel, files this Complaint against Defendant Heartstone Farm, Inc. ("Heartstone"), and, in support thereof, alleges as follows:

## PARTIES

1. Scarff Brothers is a Pennsylvania corporation with a principal place of business at 369 Spring Grove Road, East Earl, Pennsylvania, 17519.

2. Heartstone is a Delaware corporation with a principal place of business at 128 Paine Road, Charleston, Maine 04422.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

4. Venue is proper in this District because a substantial part of the events or omissions giving rise to Scarff Brothers' claims occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

**FACTS**

5. Heartstone is in the business of sourcing premium, anti-biotic and hormone-free beef, pork, poultry, and seafood from small farms in the northeastern United States for sale directly to consumers, primarily through the company's website.

6. Scarff Brothers is in the cattle dealership and brokerage business.

7. In June 2024, Heartstone engaged Scarff Brothers to establish a consistent and steady supply of grass-fed beef cattle, which Heartstone would purchase and then slaughter for meat to fulfill orders placed by Heartstone customers.

8. It was critically important to Heartstone's business that it have a reliable pipeline of grass-fed beef cattle available to be supplied from Scarff Brothers in order to fulfill demand from its high-end consumers.

9. The parties' agreement called for Heartstone to purchase 25 head of grass-fed beef cattle from Scarff Brothers every other week starting in mid-July 2024, with Heartstone's purchase commitments increasing to 40 head every other week in February 2025, and then 40 head every week for the remainder of 2025.

10. Under the parties' agreement, Scarff Brothers would arrange for the cattle to be delivered to the abattoir, and Heartstone would pay trucking fees and a payment based on the live weight of the cattle delivered.

11. The parties agreed on a premium price of $0.20/lb over the USDA weekly reported LIVE cattle 5 area average for the week that the cattle were delivered, with such price premium increasing to $0.25/lb over that average during the seasons the cattle could not be grazed.

12. Heartstone insisted that customary third-party affidavits attesting to the fact that the cattle were raised on a grass-fed diet were not necessary. Heartstone did not want to incur the additional cost attendant to obtaining these affidavits.

13. In reliance on Heartstone's commitments, Scarff Brothers established a steady pipeline of hundreds of head of grass-fed beef cattle raised specifically for Heartstone.

14. In establishing this pipeline of cattle for Heartstone, Scarff Brothers incurred significant expenses that it would not have otherwise incurred, and also deployed business resources that it would have used elsewhere had Heartstone not made the purchase commitments that it did. For example, Scarff Brothers incurred the increased costs of raising grass-fed beef cattle, which are significantly more expensive to feed and maintain than traditionally raised cattle.

15. Despite its commitments to Scarff Brothers, Heartstone abruptly terminated its agreement with Scarff Brothers in or around February 2025.

16. Due to Heartstone's termination of the parties' agreement, Scarff Brothers was left with hundreds of head of grass-fed beef cattle raised to Heartstone's specifications that it could not re-sell on the open market for the premium commanded by such cattle due to lack of the necessary affidavits.

17. Because of Heartstone's breach of the parties' agreement, Scarff Brothers has incurred damages in the principal amount of at least $420,000.

18. Heartstone communications confirm Heartstone's understanding that Scarff Brothers had raised hundreds of head of grass-fed beef cattle for sale to Heartstone. Specifically, text message communications between Heartstone employees on or about January 21, 2025 confirm Heartstone's understanding that Scarff Brothers had approximately 600 head of cattle currently "on feed" for Heartstone.

## COUNT I
## BREACH OF CONTRACT

19. The foregoing paragraphs are incorporated herein by reference as though set forth fully.

20. As detailed above, Scarff Brothers and Heartstone entered into an enforceable contract pursuant to which Heartstone agreed to purchase a certain number of grass-fed beef cattle from Scarff Brothers at specified intervals and at agreed-upon prices, and Scarff Brothers agreed to have sufficient supply of grass-fed beef cattle available to fulfill Heartstone's orders.

21. The parties agreed that this arrangement would last at least through the calendar year 2025.

22. Heartstone abruptly stopped buying any grass-fed beef cattle from Scarff Brothers in February 2025.

23. Heartstone's refusal to purchase any grass-fed beef cattle from Scarff Brothers as of February 2025 constituted a breach of the parties' contract.

24. Because of Heartstone's breach of the parties' contract, Scarff Brothers has been forced to sell at least 441 heads of grass-fed beef cattle at prices significantly below what Heartstone had agreed to pay, resulting in lost revenue of at least $420,000.

WHEREFORE, Scarff Brothers respectfully requests that this Court enter judgment in its favor and against Heartstone in a principal amount to exceed $75,000, together with such other and further relief that the Court deems necessary and appropriate, including, but not limited to, prejudgment interest, attorneys' fees, and costs.

## COUNT II
## PROMISSORY ESTOPPEL
### (in the alternative)

25. The foregoing paragraphs are incorporated herein by reference as though set forth fully.

26. As detailed above, Heartstone promised to purchase a certain number of grass-fed beef cattle from Scarff Brothers at specified intervals and at agreed-upon prices, and Scarff Brothers agreed to have sufficient supply of grass-fed beef cattle available to fulfill Heartstone's orders.

27. Heartstone promised to purchase such grass-fed beef cattle from Scarff Brothers at a premium price without the need for Scarff Brothers to obtain the third-party proof that is usually required to sell grass-fed beef at a premium on the open market.

28. Heartstone promised Scarff Brothers that this arrangement would last at least through the calendar year 2025.

29. In reliance on Heartstone's promises, Scarff Brothers incurred significant expense raising grass-fed beef cattle that it would not have otherwise incurred, and also incurred the significant opportunity cost of devoting its resources to raising grass-fed beef cattle for purchase by Heartstone instead of raising traditional beef cattle for purchase on the open market.

30. In February 2025, Heartstone broke its promises to Scarff Brothers and abruptly stopped buying any grass-fed beef cattle from Scarff Brothers.

31. Because Heartstone broke its promises, Scarff Brothers was left with hundreds of head of premium grass-fed beef cattle that it could not re-sell at a premium price due to Heartstone's insistence that Scarff Brothers refrain from obtaining customary third-party proof of how the cattle were raised.

32. Instead, Scarff Brothers was forced to sell at least 441 heads of grass-fed beef cattle at prices significantly below what Heartstone had agreed to pay, resulting in lost revenue of over $420,000.

33. Scarff Brothers reasonably relied on Heartstone's promises to its detriment.

34. Hearstone should reasonably have foreseen that Scarff Brothers would rely on Heartstone's promises to its detriment.

35. Injustice can be avoided only by enforcing Heartstone's promises.

36. Accordingly, in the alternative event that this Court finds that the parties did not enter into an enforceable contract, Scarff Brothers has recourse against Heartstone under the doctrine of promissory estoppel to recover the revenue that it would have earned had Heartstone not broken its promises.

WHEREFORE, Scarff Brothers respectfully requests that this Court enter judgment in its favor and against Heartstone in a principal amount to exceed $75,000, together with such other and further relief that the Court deems necessary and appropriate, including, but not limited to, prejudgment interest, attorneys' fees, and costs.

Dated: February 20, 2026

                                         Respectfully submitted,

                                         SAXTON & STUMP, LLC

                                    By: */s/ G. William Bartholomew, Esq.*
                                            Robert W. Pontz, Esq. (PA No. 56554)
                                            G. William Bartholomew, Esq. (PA No. 337406)
                                            280 Granite Run Drive, Suite 300
                                            Lancaster, PA 17601
                                            T: 717-556-1000
                                            E: bpontz@saxtonstump.com
                                                wbartholomew@saxtonstump.com

                                         *Counsel for Plaintiff Scarff Bros., Inc.*